SCRIPTURE v. MORRIS et al.

(Supreme Court, Appellate Division, Second Department. March 7, 1899.)

JUDICIAL SALES—PURCHASERS—DOUBTFUL TITLE.

An owner of land, after filing a plat thereof, on which he described several streets, conveyed lots, reciting in the conveyances that such streets were to remain open as public highways. Subsequently the plan of the streets was changed by the town authorities, so that the lots were extended into the street on which they originally abutted. One of such grantees mortgaged two of the lots, describing them with reference to the new plan. *Held*, that the purchaser at a foreclosure sale under the mortgage could not be compelled to complete his purchase, since the other grantees might insist on an easement over the portion of such lots in the original street, and a purchaser at a judicial sale cannot be compelled to accept a doubtful title.

Appeal from special term.

Action by Sarah G. H. Scripture against Fanny Morris, impleaded with William H. Good. From an order directing William H. Good to complete his purchase at a foreclosure sale, he appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Robert H. Wilson, for appellant.

Frank G. Wild, for respondent.

GOODRICH, P. J. There is no dispute in the moving papers as to the essential facts upon which this appeal must be decided. Gilbert S. Thatford, in 1867, being the owner of a large tract of land in the town of New Lotts, made and filed in the office of the register of the county of Kings a map of the same, upon which were laid down several streets, and, among them, Thatford avenue. The map is called "Map No. 1," and contained 156 lots, and among them the premises in question, designated as "Lots Nos. 76 and 77." These lots were each 25 by 100 feet, and fronted on Thatford avenue. In 1869 Thatford conveyed these two lots by a warranty deed, which described them by a reference to the map, and by the numbers thereon. The boundaries were also described as follows:

"Said lots, taken together, being bounded northerly by lots numbers 75 and 148 upon said map, easterly by Williamson avenue, southerly by lots numbers 78 and 145, and westerly by Rockaway avenue; said lots being each twenty-five feet in width in front and rear, by one hundred feet in depth on each side; said avenues to be and to remain open as public highways, reserving, nevertheless, to the said Gilbert S. Thatford, the right to enter upon, regulate, and grade said avenue, or any part thereof."

Several conveyances were subsequently made, by the last of which the title came to William H. Ellis. Each of the conveyances described the lots by reference to the first map. One had a clause added

to the description, "Said avenue [Thatford] to be open and remain as a public highway."

In 1869 an act was passed (Laws 1869, c. 670) appointing commissioners to lay out a plan for streets in New Lotts and other towns in the county of Kings, and, in pursuance of that act, a new plan of streets was adopted, by which Thatford avenue, continuing to be, as before, a street 60 feet in width, was moved bodily ten feet westerly of its former position, so that a strip of the street, 10 feet in width, was added to the front of the lots, and an equal portion cut from the rear. A new map, called "Map No. 2," and showing this change, was filed in the register's office in 1872. The new or changed street is of the same width as the old street or avenue, and the dimensions of the two lots are the same as before. This map also shows that a 25-foot lot, which was situated between the premises in question and an unnamed avenue on the first map, was thrown into a street, now called ―――― avenue, so that the two lots are now at the corner of Thatford and Sutter avenues. In August and December, 1890, Ellis, by two deeds, conveyed the lots to Joseph Morris, by a reference to a map No. 3, which is not in the record; but, as the description is of two lots at the corner of Thatford and Sutter avenues, it evidently refers to the premises as laid down on map No. 2. In July, 1893, Morris conveyed to Fanny Morris, and she executed the mortgage which was the subject of the foreclosure action. The description is of the two lots at the corner of Thatford and Sutter avenues. During the time of these conveyances, Thatford made conveyances of several other lots on the east side of Rockaway avenue, in the vicinity of the lots in question, the descriptions in which refer to map No. 1. Thus, it appears that, while the conveyances to several parties referred to land bounded by Thatford avenue as originally laid out on map No. 1, the purchaser is now ordered to take title under the judgment to premises which include a street in which various grantees have or may claim an easement or right of way over a strip of it, 10 feet in width, along Thatford avenue.

We think this situation is controlled by the decision of the court of appeals in Haight v. Littlefield, 147 N. Y. 338, 41 N. E. 696, a case almost exactly analogous to the present one, where the court held:

"This conveyance and the others referred to, with the maps bounding the premises upon a street, secured to the plaintiffs an easement or right of way in the strip of land so delineated, described, and recognized. Whether it was then a public street or not, this easement or right of way was attached as an appurtenance of the land conveyed, and part of the thing granted; and thereupon the plaintiffs acquired the right to insist at all times that the way be kept open and unobstructed for the benefit of their premises, and as a means of access to and from the same. It is a property right the destruction or invasion of which constitutes a ground of relief in equity. Irrespective of the rights of the public in a public street, the owners of lots bounded upon a street have, under the circumstances disclosed, a right of way as between themselves and their grantor."

This court announced similar doctrine in Nicklas v. Keller, 9 App. Div. 216, 41 N. Y. Supp. 172, following the case last cited.

It is authoritatively settled that a purchaser at a judicial sale

will not be compelled to accept a doubtful title, or the hazard of a contest with other parties which will seriously affect the value of the property. Argall v. Raynor, 20 Hun, 267; Jordan v. Poillon, 77 N. Y. 518.

We think that, under these authorities, the order should be reversed, with costs.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.